UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| In Re:<br><br>Sharon Kay Bergmann,<br><br>                      Debtor. | Bankruptcy Case<br>No. 15-00387-JMM |
|---|---|

**MEMORANDUM OF DECISION**

*Introduction*

Sharon Bergmann ("Debtor") filed a chapter 13[1] petition on March 31, 2015.  Dkt. No. 1.  This Court ordered confirmation of Debtor's chapter 13 plan on January 4, 2016.  Dkt. No. 85.  Before the Court is a motion to modify the automatic stay ("Stay Motion") filed by creditor Royal Von Puckett ("Creditor"), in which Creditor requests permission to return to Idaho state court to complete his pending motion for reconsideration in *Puckett v. Smith*, Case #CV-OC-1995-30747.  Dkt. No. 173.  On October 22, 2018, Debtor objected to the Stay Motion.  Dkt. No. 175.  Creditor replied to Debtor's objection on October 26, 2018.  Dkt. No. 176.  The chapter 13 Trustee ("Trustee") filed a separate objection to the Stay Motion on October 29, 2018.  Dkt. No. 177.  In essence, the

---

[1] Unless otherwise indicated, all chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

MEMORANDUM OF DECISION − 1

objections to the Stay Motion argue the stay should not be lifted because ownership of certain judgments was adjudicated in Debtor's favor when the Court confirmed the chapter 13 plan. Thus, Trustee and Debtor argue there is no need to lift the stay.

At the preliminary hearing on the Stay Motion on October 30, 2018, the Court instructed Debtor, Creditor, and Trustee to submit further briefing in advance of a continued hearing on January 8, 2019. Dkt. No. 185. Creditor filed his brief on November 23, 2018. Dkt. No. 189. On December 18, 2018, Debtor and Trustee filed a joint brief supporting their objection to the Stay Motion. Dkt. No. 196. The Court heard additional oral argument on the matter on January 8, 2019, at which time counsel for the Creditor was directed to submit a stipulation of facts by February 9, 2019.[2] Dkt. No. 200. Creditor filed a document entitled "Stipulation" on February 8, 2019, appending ten exhibits labeled Exhibits 1 through 10. Dkt. No. 201. The "Stipulation," however, was unsigned by the Debtor or the Debtor's attorney. *Id.* Creditor also submitted an explanation of his efforts to obtain opposing counsel's signature. Dkt. No. 202. Since the parties were unable to provide a stipulation to the Court, a final evidentiary hearing was scheduled for March 5, 2019. Dkt. No. 203. Before the hearing, on February 26, 2019, the parties filed a stipulation re: Judicial Notice of Pending State Court Motion that contained one exhibit. Dkt. No. 204. At the hearing on March 5, 2019, the parties

---

[2] At the January 8, 2019, hearing, the Creditor's attorney requested the authority to file a stipulation of uncontested facts and documents.

MEMORANDUM OF DECISION − 2

stipulated on the record to certain facts and advised the Court that they each rested. After the March 5, 2019 hearing, the Court took the matter under advisement. Dkt. No. 205.

The Court has considered the evidence and arguments of the parties, and this Memorandum Decision sets forth the Court's findings, conclusions, and reasons for its disposition of the motion. Rules 7052; 9014.

### *Facts*

On February 11, 1991, Debtor obtained a state court judgment of $202,523.13 against her ex-husband, Vernon K. Smith ("Smith")[3]. Oral Stipulation of facts of March 5, 2019 ("Oral Stipulation"). On January 6, 1999, in the same state court case, Debtor obtained a second judgment against Smith, this time for $34,770.16. *Id.* Debtor filed a chapter 13 petition on March 31, 2015. Dkt. No. 1. In her bankruptcy schedules, Debtor included the right to payment under the two judgments (the "Smith Judgments") as assets worth a combined $1,070,500.[4] Dkt. No. 18 at 5.

In a separate case, Creditor obtained a judgment of $69,220.30 against the Debtor on November 8, 1999 (the "Puckett Judgment"). Dkt. No. 201-5 at 1. In her bankruptcy schedules, Debtor listed the current liability on the Puckett Judgment at $179,429.90. Dkt. No. 18 at 14. Thereafter, Creditor instructed Smith, as his attorney, to use Creditor's

---

[3] Vernon K. Smith, an attorney, also is counsel of record for Creditor.

[4] It is unclear to the Court how this claim amount was calculated given the value of the Smith Judgments. For purposes of this motion, the judgment amount and how it is calculated is not material.

MEMORANDUM OF DECISION − 3

rights under the Puckett Judgment to force a sheriff's sale of Debtor's interests in the Smith Judgments on November 13, 2014. Oral Stipulation. Creditor was the lone bidder at the sheriff's sale and purchased roughly a dozen legal instruments, among them the Smith Judgments, on a credit bid of $100.[5]

On December 22, 2014, Debtor filed a motion in the District Court of the Fourth Judicial District of the State of Idaho, In and For the County of Ada ("Idaho State Court") to set aside the sheriff's sale. Oral Stipulation. On February 9, 2015, the Idaho State Court granted Debtor's motion to set aside the sheriff's sale. Oral Stipulation. Ten days later, Creditor filed a motion for reconsideration of the order setting aside the sale. Dkt. No. 204-1. Shortly thereafter, Debtor filed her chapter 13 petition, that stayed the pending motion for reconsideration under § 362(a). Dkt. No. 1. More than three years later, on August 6, 2018, the Idaho State Court requested an update from the parties on the status of Debtor's bankruptcy case, the automatic stay, and whether Creditor intended to continue to pursue his motion for reconsideration.[6] Oral Stipulation. Creditor's Stay Motion was filed thereafter.

---

[5] At this Court's hearing on October 30, 2018, Smith argued that shortly after the sheriff's sale, Creditor allegedly conveyed ownership of the Smith Judgments to Smith, ostensibly yielding the odd result of Smith becoming the owner of the judgments against himself. That argued assignment of ownership from Creditor to Smith was not made a part of the record.

[6] Because the order confirming the plan did not re-vest the Debtor's interest in the Smith Judgments in the Debtor, the stay imposed by § 362(a) is still in place because the Smith Judgments are still property of the estate. *See* § 362(c)(1); Dkt. No. 85 at 2–3.

MEMORANDUM OF DECISION − 4

Debtor's chapter 13 plan was confirmed by this Court on January 4, 2016. Dkt. No. 85. The confirmed plan includes provisions relevant to the Puckett Judgment and the Smith Judgments. First, the plan calls for payments to Creditor as an unsecured creditor based on the Puckett Judgment.[7] Dkt. No. 37 at 2. Second, the plan addresses the Smith Judgments:

> In addition, Debtor shall take any steps necessary to collect on [the Smith Judgments] totaling about $1,000,000, and shall pay to the Trustee the net proceeds after all attorney fees and costs incurred in collection of the judgments. This may, or may not, result in all allowed claims being paid in full.

Dkt. No. 37 at 2.

This Court's confirmation order also discussed the Smith Judgments at length, echoing some of the language of the plan:

> E. The Debtor will cooperate with the Chapter 13 Trustee to take all actions necessary to collect on any and [sic] of her judgments against her former spouse, Vernon K. Smith and to turn over all net proceeds after the payment of attorney fees and costs incurred in collection of said funds.
>
> F. Pursuant to the terms of the plan, Kathleen McAllister, as Chapter 13 Trustee of the estate of Sharon Bergmann, will retain as part of the estate the judgments which Debtor Sharon Bergmann holds against her former spouse, Vernon K. Smith, entered originally on February 11, 1991, and on January 6, 1999, and shall take any reasonable actions necessary to collect

---

[7] At the hearing on January 8, 2019, the Trustee reported both that Debtor was current on her monthly plan payments of $1,400 per month, and that such payments alone would not result in a 100% payout to Creditor.

MEMORANDUM OF DECISION − 5

>those judgments and to pay the net amount of those judgments to creditors. Kathleen McAllister, as Chapter 13 Trustee of the estate of Sharon Bergmann, may employ counsel to collect on said judgments, in her discretion, and may, in her discretion, employ Swafford Law Office as counsel for the estate.

Dkt. No. 85 at 2–3. Thus, if Debtor successfully collects on the Smith Judgments, the net proceeds will go to the Trustee to distribute to Debtor's creditors, including Creditor, which presumably would result in a 100% payout to all creditors.[8] Puckett did not appeal the confirmation order.[9]

The issue of the ownership of the Smith Judgments arose at other times during Debtor's bankruptcy case. For example, Creditor filed various objections to confirmation and approval of professional fees wherein Creditor alleges the Smith Judgments are unenforceable against Smith. Dkt. No. 32 at 5, 7; Dkt. No. 65 at 8; Dkt. No. 93 at 3, 4,

---

[8] The parties do not appear to dispute that there would be sufficient property of the estate in the Smith bankruptcy to pay the balance of the Puckett claim. It bears noting that collection of the Smith Judgments may also depend on the outcome of Smith's own chapter 11 case, which he filed on September 6, 2018. Case #18-01171-JDP (Bankr. D. Idaho).

[9] Creditor's position on stay relief appears to be at odds with his interests in Debtor's case. As it stands, if the Idaho State Court does not reconsider its previous judgment and finds the sheriff's sale to be invalid, Creditor stands to receive a greater payout upon satisfaction of the Smith Judgments. Even so, Creditor seeks stay relief to undo the sale, thus willfully attempting to limit the extent of his own benefit under the confirmed plan.

The Court presumes Creditor has instructed Smith to proceed as such in this case and is mindful of the unusual position Creditor has taken in this matter by virtue of the representations made by Vernon Smith, the attorney for the Creditor and the alleged assignee of whatever was purchased by Creditor at the sheriff's sale. If the sale for $100 is upheld (i.e., the Idaho State Court enters an order reversing its previous order), then Creditor and the Debtor's other creditors stand to receive nothing on the Smith Judgments. If the sheriff's sale is overturned (i.e., the Idaho State Court does not reconsider its previous order), then all creditors will presumably receive a 100% distribution.

MEMORANDUM OF DECISION − 6

6–7. In response to these pleadings, Debtor argued the sheriff's sale was invalid, and the Smith Judgments are part of her bankruptcy estate. Dkt. No. 35 at 1; Dkt. No. 64 at 3.

## *Analysis and Disposition*

A. *Preclusive Effect of Chapter 13 Confirmation*

    1. <u>Statutes, Rules, and Case Law at Issue</u>

Section 1327(a) describes the effect of confirmation of a chapter 13 plan: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Accordingly, the Ninth Circuit has held "it is beyond cavil that 'once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to *res judicata* effect.'" *Enewally v. Wash. Mut. Bank (In re Enewally)*, 368 F.3d 1165, 1172 (9th Cir. 2004) (quoting *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995)); *accord Duplessis v. Valenti (In re Valenti)*, 310 B.R. 138, 150 (9th Cir. BAP 2004); *Scott v. Countrywide Home Loans, Inc. (In re Scott)*, 376 B.R. 285, 292 (Bankr. D. Idaho 2007). "This rule is consistent with the general principle of *res judicata* that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Enewally*, 368 F.3d at 1172 (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). Res judicata is now more commonly referred to as claim preclusion. *See Brawders v. Cty. of Ventura (In re*

MEMORANDUM OF DECISION − 7

*Brawders*), 503 F.3d 856, 863 n.1 (9th Cir. 2007) ("We use the term "res judicata" in its generic sense—encompassing doctrines that have been more precisely called claim preclusion and issue preclusion as well as the codification in Section 1327 of the effect of confirmation.").

Principles of claim preclusion must be applied carefully, used as "scalpels, not broadswords." *Alonso v. Summerville (In re Summerville)*, 361 B.R. 133, 140 (9th Cir. BAP 2007); *see also Enewally*, 368 F.3d at 1172–73 ("[T]he principle of res judicata should be invoked only after careful inquiry because it blocks unexplored paths that may lead to truth."). As the Bankruptcy Appellate Panel of the Ninth Circuit has explained, to be accorded preclusive effect:

> a plan should clearly state its intended effect on a given issue. Where it fails to do so it may have no res judicata effect for a variety of reasons: any ambiguity is interpreted against the debtor, any ambiguity may also reflect that the court that originally confirmed the plan did not make any final determination on the matter at issue, and claim preclusion generally does not apply to a "claim" that was not within the parties expectations of what was being litigated, nor where it would be plainly inconsistent with the fair and equitable implementation of a statutory authority or constitutional scheme.

*Brawders*, 325 B.R. at 411. Applying these standards, courts have given preclusive effect to chapter 13 plan provisions addressing issues of adequate protection, lack of equity, and the retention of property necessary for successful reorganization. *Ellis v. Parr (In re Ellis)*, 60 B.R. 432, 434 (9th Cir. BAP 1985); *Matter of Lewis*, 8 B.R. 132, 137 (Bankr. D. Idaho 1981).

MEMORANDUM OF DECISION − 8

And while confirmed plans normally have preclusive effect on issues clearly decided by the plan, "the confirmed plan has no effect on issues that must be brought by an adversary proceeding, or were not sufficiently evidenced in a plan to provide adequate notice to the creditor." *Enewally*, 368 F.3d at 1173. Rule 7001(2) provides that adversary proceedings include "proceeding[s] to determine the validity, priority, or extent of a lien or other interest in property, but not a proceeding under Rule 3012 or Rule 4003(d)."

Preclusion issues are affirmative matters, "and the proponent of preclusion has the burden of proof and bears the risk of non-persuasion." *Summerville*, 361 B.R. at 141–42 (citing *George v. Morro Bay (In re George)*, 318 B.R. 729, 737 (9th Cir. BAP 2004)). Federal courts apply issue preclusion by way of the *Restatement (Second) of Judgments*. *Id.* at 141 (citing *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). Section 27 of the *Restatements* provides "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Id.* Distilled into a legal standard, this means the party asserting issue preclusion must satisfy six elements:

> Five of the elements are described as 'threshold' requirements: (1) identical issue, (2) actually litigated in the former proceeding, (3) necessarily decided in the former proceeding, (4) former decision final and on the merits, and (5) party against who preclusion sought either the same, or in privity, with party in former proceeding.

MEMORANDUM OF DECISION − 9

>The sixth element is a mandatory "additional" inquiry into whether imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy.

*Id.* at 144 (quoting *In re Khaligh*, 338 B.R. 817, 824–25 (9th Cir. BAP 2006)).

### 2. Analysis

Here, Debtor and Creditor dispute the ownership of the Smith Judgments based on the validity or invalidity of the sheriff's sale held on November 13, 2014. Put differently, the parties disagree over the extent of an interest in property; thus, this is a matter of the kind identified in Rule 7001(2) that must be resolved by an adversary proceeding. As such, based on the Ninth Circuit BAP's holding in *Enewally*, the chapter 13 plan and accompanying confirmation order's treatment of the Smith Judgments should not be afforded issue-preclusive effect regarding the ownership of the Smith Judgments.

Even if this Court were to set *Enewally* aside and otherwise proceed with the substantive merits of Debtor's issue preclusion argument, Debtor has failed to show that three of the elements of issue preclusion are satisfied. While the parties to the confirmation order and this action are the same, and the confirmation order was a final order on the merits, thus satisfying two elements, the remaining threshold elements of issue preclusion have not been established.

#### a. Identity of Issues

Debtor argues the issue of the ownership of the Smith Judgments was litigated in advance of confirmation and that Creditor now raises the identical issue in his Stay

MEMORANDUM OF DECISION − 10

Motion. Debtor and Trustee rely primarily on the contents of Paragraph F of the confirmation order, which indicates the Trustee "will retain as part of the estate the judgments which Sharon Bergmann holds against her former spouse[.]" Reading this language in isolation, and attempting to frame the issue broadly, one can see there is a colorable argument that the confirmation order addressed the same issue that Creditor seeks to return to state court to litigate—the ownership of the Smith Judgments.

If the legal issue is framed more acutely, however, in terms of the validity of the sheriff's sale under Idaho state law, then issue preclusion does not apply. Neither party argued the merits of Idaho state law on the sheriff's sale prior to confirmation, and nothing in the plan or confirmation order specifically addressed the issue of the validity of the sheriff's sale. Neither party addressed this issue in any detail in briefing or oral argument. Since it is unclear whether the issues in this case are identical, Debtor and Trustee have failed to meet their burden on this element.

### b. Issue Actually Litigated in Prior Proceeding

Next, the validity of the sheriff's sale was not actually litigated by Debtor, Creditor, and Trustee prior to confirmation. The pre-confirmation and post-confirmation pleadings of both parties make conclusory references to the disputed ownership of the Smith Judgments. For example, in an early objection to confirmation, Creditor characterized Debtor's rights to the Smith Judgments as "non-existent," and asserted that "neither [of the Smith Judgments] are enforceable or collectible under Idaho law." Dkt

MEMORANDUM OF DECISION − 11

No. 32 at 5, 7.  In response, Debtor asserts she is the proper owner of the Smith Judgments but does not mention the validity of the sheriff's sale in any pre-confirmation pleading.  Dkt. Nos. 35, 64.  Debtor and Trustee also point to some of Creditor's post-confirmation remarks about the ownership of the Smith Judgments made in objections to fee applications.  Dkt. Nos. 77, 93.  Again, these objections include conclusory statements about the ownership of the Smith Judgments but make no mention of the validity of the sheriff's sale.

    To summarize, the parties did not actually litigate the ownership issues surrounding the Smith Judgments or the validity of the sheriff's sale at the confirmation hearing.  Nor is there any language in the plan or confirmation order establishing that ownership was litigated.  The parties made the Court aware that the issue of the ownership of the Smith Judgments was disputed, but nothing in the record suggests the parties briefed or argued the questions of Idaho law pertaining to the sheriff's sale before this Court.  Correspondingly, no order of the Court mentioned the validity of the sheriff's sale or the possibility that someone other than Debtor might own the Smith Judgments.  The Court's instructions to the Debtor and Trustee in the plan with respect to the collection of the Smith Judgments did not adjudicate the parties' state law ownership rights, which remained pending before the Idaho State Court throughout the confirmation proceedings.

MEMORANDUM OF DECISION − 12

### c. Necessarily Decided

Moreover, the issue of ownership was not necessarily decided by the Court at confirmation. The Court necessarily decided whether the requirements of § 1325 with respect to the confirmation of a chapter 13 plan were met. The Court confirmed Debtor's plan, which provided for payments from Debtor to Creditor via the Trustee. The Court even went so far as to order the preservation of the Trustee's right to pursue and collect any amounts due the Debtor in the future based on the Smith Judgments. But the Court did not, as a matter of necessity prerequisite to confirmation, decide the validity of the sheriff's sale and the ownership rights of the parties to the Smith Judgments based on its evaluation of Idaho state law.

Specifically, the Court ordered Debtor to cooperate with the Trustee to collect on the Smith Judgments and to turn over the proceeds to the Trustee. Dkt. No. 85 at 2–3. The Court also ordered that the Trustee retained the rights, and the responsibility, to pursue and collect the Smith Judgments, and to pay any collected amounts to creditors. *Id.* at 3. While the confirmation order reads Trustee "will retain as part of the estate the judgments which [Debtor] holds against [Smith]," the intent of this statement was to clarify that the Trustee was to retain any of Debtor's rights to payment under the Smith Judgments. In other words, these rights would not re-vest in the Debtor. The Court's statement on the Trustee's retention of those rights was not intended to adjudicate the

MEMORANDUM OF DECISION − 13

state law rights of the parties or to abrogate any party's claims to ownership of the Smith Judgments under Idaho state law.

The intended effect of the Court's confirmation order on the Smith Judgments was to mandate that Trustee try to collect on the Smith Judgments, with the cooperation of the Debtor, with Trustee paying any collected funds to Debtor's creditors and the remainder being returned to the Debtor. If Debtor and Trustee never collect anything on the Smith Judgments, the confirmation order will remain valid and effective. If Debtor and Trustee collect in full on the Smith Judgments, the confirmation order will remain valid and effective. Therefore, deciding whether Creditor or Debtor or Smith or some other party owned the Smith Judgments was not necessary to deciding the legal issue of chapter 13 confirmation under § 1325 that was before the Court. The Court's order necessarily decided what would happen if the Debtor or Trustee were to successfully collect on the Smith Judgments in the future but did not decide who owned the Smith Judgments.[10]

### 3. Issue Preclusion Does Not Apply

Here, Debtor and Trustee, as the proponents of issue preclusion, failed to meet their burden of showing all the elements of issue preclusion were met. Issue preclusion is not available to resolve issues that must be raised as adversary proceedings, such as the

---

[10] Given the above deficiencies in the argument that the threshold requirements of preclusion are met, the Court need not delve into a discussion of whether preclusion is fair and consistent with sound public policy.

MEMORANDUM OF DECISION − 14

instant dispute over the extent of the parties' property interests in the Smith Judgments. Furthermore, as discussed above, issue preclusion is inappropriate because Debtor did not establish the identity of issues between the two proceedings; the issues of the validity of the sheriff's sale and the Smith Judgments were not actually litigated prior to confirmation; and the issue of ownership of the Smith Judgments was not necessarily decided by the plan or the confirmation order.

   B. *Motion for Stay Relief - § 362(d)*

      1. The Statute

Under § 362(d)(1), the automatic stay can be modified "for cause, including the lack of adequate protection of an interest in property of such party in interest." Cause can be found "when necessary to permit litigation to be concluded in another forum, particularly if the nonbankruptcy suit involves multiple parties or is ready for trial." 3 *Collier on Bankruptcy*, ¶ 362.07[3][a] (Alan Resnick & Henry J. Sommer eds., 16th ed.). This Court has previously observed:

> Although cause is not defined in the Code, under circumstances such as these, "Congress has stated: It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere."

*Allied Capital v. Gibson (In re Gibson)*, 349 B.R. 54, 58 (Bankr. D. Idaho 2006 (quoting *In re Estep*, 98.3 I.B.C.R. 73, 73 (Bankr. D. Idaho 1998) (internal citations omitted)).

MEMORANDUM OF DECISION − 15

2. Analysis

Creditor argues the cause in this case is the need to return to Idaho State Court to allow the adjudication of the Debtor's and/or Puckett's ownership rights in the Smith Judgments. The ownership of the Smith Judgments is relevant to the provisions of Debtor's confirmed plan because it could lead to a greater payout to creditors, or at least provide creditors with the certainty that no such payout is forthcoming. The ownership of the Smith Judgments is also relevant in Smith's chapter 11 case, as Debtor is a creditor in that case based on the Smith Judgments. In the course of his representation of Creditor, Smith indicated he would file an adversary complaint contesting the amount of Debtor's claims in the Smith chapter 11, which would inevitably require that court to decide whether Idaho State Court or bankruptcy court is the proper place to decide the validity of the sheriff's sale and the ownership of the Smith Judgments.

There is no good reason for the issue of the ownership of the Smith Judgments to remain unresolved. As noted above, the automatic stay can be modified to allow parties to pursue litigation in other forums, especially where a matter is ready for trial. Here, the Idaho State Court has already decided this case once and a motion for reconsideration of the initial decision remains pending in that court. The case started in Idaho State Court and the Idaho State Court judge recently inquired about the status of the stay, suggesting readiness to adjudicate the pending motion.

MEMORANDUM OF DECISION − 16

Allowing the Idaho State Court to proceed with reconsideration of the validity of the sheriff's sale makes sense for many reasons. First, on a broad level, it will allow litigation pending in this Court and the Idaho State Court to proceed, thus encouraging the just and speedy determination of the legal rights of the parties in the Smith Judgments. Second, it allows the parties to continue litigation before a court familiar with the facts and issues in dispute. Third, it allows the issue to be decided by a court with greater familiarity with Idaho law over sheriff's sales and how it applies in this case. Lastly, there is nothing in the record to suggest the bankruptcy estate would be prejudiced by allowing the Idaho State Court to decide the issue.[11]

### *Conclusion*

Based on the foregoing, the Court finds good cause exists to grant Creditor's motion for relief from stay under § 362(d)(1). Therefore, Creditor's motion for relief from stay is granted to permit Creditor to adjudicate his motion for reconsideration before

---

[11] Debtor and Trustee argue that it is unfair, or even prejudicial, for Creditor to wait over three years before seeking the relief sought in the Stay Motion. But in many ways, Debtor and Trustee controlled this timing based on how they commenced legal collection efforts under the Smith Judgments. While Trustee argues collection began immediately after the plan was confirmed, the record does not support that argument. Further, even if collection had commenced, it still does not eliminate the fact that the motion for reconsideration was pending when Debtor filed her chapter 13 petition.

MEMORANDUM OF DECISION − 17

the Idaho State Court and any timely appeal of that determination to the appellate courts of the State of Idaho.[12] A separate order will be entered.

DATED: March 6, 2019

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

---

[12] Counsel for Creditor argued that he intended to timely appeal any adverse decision rendered in Idaho State Court. Thus the stay is lifted to permit any party to timely appeal to the Idaho appellate courts.

MEMORANDUM OF DECISION − 18